**THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

ROYAL CAR RENTAL, INC., ET AL,

   *Plaintiffs*,

     v.

BANCO POPULAR DE PUERTO RICO,

   *Defendant.*

CIV. NO. 11-1399 (PG)

## OPINION AND ORDER

    Plaintiffs Royal Car Rental, Inc. ("RCR"), Bumpers Royal Corp. ("Bumpers Royal"), Frank López-Carballo ("López") and his ex-wife Naidabel Soto-Menéndez ("Soto") (hereinafter collectively referred to as "Plaintiffs") filed this action against Defendant Banco Popular de Puerto Rico ("BPPR" or "Defendant") as successor in interest of Westernbank of Puerto Rico ("Westernbank"). In their amended complaint, Plaintiffs allege that they subscribed a Line of Credit agreement with Westernbank, and that said bank breached its applicable terms. They also aver that Westernbank fraudulently obtained an adverse Bankruptcy-Court judgment against them, and that BPPR did not remedy said conduct.

    Pending before the Court is a motion to dismiss filed by Defendant (Docket No. 21) which was opposed by Plaintiffs (Docket No. 44). Defendants filed a reply thereto (Docket No. 51). Also pending before the Court is a motion to strike the motion to dismiss filed by Plaintiffs (Docket No. 30), and a notice of "request for certification [of] state law questions" (Docket No. 36). For the following reasons, the Court **GRANTS** Defendant's motion to dismiss, **DENIES** Plaintiffs' motion to strike, and **DENIES** Plaintiffs' request for certification. Plaintiffs' suit is thus **DISMISSED WITH PREJUDICE.**

## I. BACKGROUND

**A. Factual Background**

    The following factual narrative is drawn directly from the amended

complaint (Docket No. 6); the Court takes it as true for purposes of resolving Defendant's motion to dismiss.

### i. *The Parties*

Co-plaintiff RCR is a corporation organized and existing under the laws of the Commonwealth of Puerto Rico. It is apparently engaged in the business of renting motor vehicles.

Co-plaintiff Bumpers Royal is also a corporation organized and existing under the laws of the Commonwealth of Puerto Rico. It is an affiliated entity of RCR and it apparently operates a body-shop type business in Puerto Rico.

Co-plaintiff Mr. López is the sole stockholder of Bumpers Royal and RCR. His ex-wife, Ms. Soto is also a plaintiff in this action. Ms. Soto was apparently married to Mr. López under the conjugal partnership regime when the events that are recounted in the amended complaint took place.

Defendant BPPR is the successor in interest of Westernbank and it is also a corporation organized and existing under the laws of the Commonwealth of Puerto Rico.

### ii. *The Financing Agreements between Westernbank and Plaintiffs*

On or about the first half of the year 2007, RCR requested financing from Westernbank. The financing requested would be for the sole and exclusive use of RCR in its business affairs.

At all pertinent times, Westernbank was insolvent and it was noncompliant with the solvency requirements of Federal and state regulations in this regard. Westernbank's insolvency merited that said bank's regulatory agencies produce signals with respect to its liquidity. Such signals were incorporated into a Cease and Desist order that Westernbank stipulated with the Federal Deposit Insurance Corporation (FDIC). Westernbank's noncompliant conduct continued and became exacerbated, which resulted in the involuntary closing of said bank on or about April 28, 2010.

The loan requested by RCR from Westernbank totaled one million dollars ($1,000,000.00) and its purpose was to pay for the acquisition of

a new fleet of motor vehicles destined to be leased by RCR in the ordinary course of its business.

As a condition for the granting of said loan, Westernbank demanded that RCR constitute collateral on the motor vehicles to be acquired to guarantee the payment of the loan requested.

Westernbank additionally demanded that Bumpers Royal, Mr. López, and Ms. Soto sign documents whereby they would become sureties or guarantors of said loan.

Westernbank additionally demanded that Bumpers Royal sign documents whereby real property mortgages would be constituted on properties owned by Bumpers Royal to secure the loan to RCR.

On May 10, 2007, Westernbank Puerto Rico and Royal Car Rental, Inc. executed a document titled Line of Credit.

Article 1.1(B) of said Line of Credit contract literally reads as follows:

> "TERM. The term within which the debtor may request loans under the Line of Credit shall expire in one year as of the date of the signing of the loan contract. The term shall be renewable automatically for additional one year periods unless the BANK notifies the debtor its decision not to renew the term of the Line of Credit thirty (30) days prior to the expiration date of the original term of its extensions."

Article 1.1(E) of said Line of Credit contract literally reads as follows:

> "E. REPAYMENT. Loans under the Line of Credit shall be payable as follows:
>
> i. Interest. Shall be paid monthly at the end of the month;
>
> ii. Principal. A minimum amount of two percent (2%) of the total balance owed on the Line of Credit shall be paid on a monthly basis to the principal of the loans; this minimum two percent (2%) payment shall be deposited in an escrow account with the BANK to be used for the future purchase of new vehicles."

In October 2007, Westernbank informed RCR and Mr. López that the Line of Credit had been increased to $1,600,000.00 and that RCR could purchase additional vehicles. RCR and Mr. López, relying on the

representations made by Westernbank, proceeded to purchase approximately sixty (60) vehicles in addition to those already acquired under the original financing.

In December 2007, in open contradiction to the contract and the representations made by the Bank, Westernbank required that RCR and Mr. López liquidate the new motor vehicles acquired.

To mitigate damages, RCR attempted to use the margin remaining within the original amount of the Line of Credit for the financing of the additional units, which Westernbank did not permit either, again in open breach of the financing agreement.

Westernbank never sent a written communication thirty (30) days prior to the anniversary of the loan to the effects that the Line of Credit would not be automatically renewed as was mandated by the Line of Credit agreement.

The Line of Credit contract was drafted in its entirety by Westernbank and its agents and representatives.

Westernbank further demanded, as a condition for the loan, in writing and by its acts, that RCR, Bumpers Royal, and Mr. López maintain all of their accounts, savings, loans, and businesses with Westernbank.

In accordance with the demands made by Westernbank, on May 10, 2007, Bumpers Royal, represented by its president, Mr. López, executed the following promissory notes as part of the Line of Credit loan:

a. Promissory note in the sum of $255,000.00 in favor of Westernbank, due upon presentation. Said promissory note was acknowledged and subscribed through affidavit 7,761 on May 10, 2007, before Notary Juan C. Ortega-Torres.

b. Promissory note in the sum of $525,000.00 in favor of Westernbank, due upon presentation. Said promissory note was acknowledged and subscribed through affidavit 7,766 on May 10, 2007, before Notary Juan C. Ortega-Torres.

c. Promissory note in the sum of $127,000.00 in favor of Westernbank, due upon presentation. Said promissory note was

acknowledged and subscribed through affidavit 7,768 on May 10, 2007, before Notary Juan C. Ortega-Torres.

d. Promissory note in the sum of $89,000.00 in favor of Westernbank, due upon presentation. Said promissory note was acknowledged and subscribed through affidavit 7,769 on May 10, 2007, before Notary Juan C. Ortega-Torres.

e. Promissory note in the sum of $4,000.00 in favor of Westernbank, due upon presentation. Said promissory note was acknowledged and subscribed through affidavit 7,770 on May 10, 2007, before Notary Juan C. Ortega-Torres.

Mr. López and Ms. Soto are parties to the Line of Credit contract. As part of the guarantees required by Westernbank to grant the one million dollars line of credit, Mr. López and his then wife were required to sign a document whereby the Bank purported to obtain a personal guarantee on what was owed by RCR to Westernbank.

Westernbank engaged in tortious, negligent and deceitful acts which deprived co-plaintiff RCR of fundamental rights. These included perjury on fundamental facts and deprivation of due process of the law. This conduct by the Bank resulted in substantial damages to plaintiffs.

The personal guarantee that Westernbank obtained from Ms. Soto is illegal and void according to the Puerto Rico Civil Rights Act, P.R. LAWS. ANN. tit. 1, §§ 13-18.

The Civil Rights Act, in part, provides as follows:

(a) No person shall be denied in Puerto Rico any access, service, and equal treatment in public places and businesses and in the means of transportation because of political, religious, race, color or sex issues, or for any other reason not applicable to all persons in general.

Violation of such statute imposes on the lender civil liability for the damages caused to the aggrieved persons as well as punitive damages. See, P.R. LAWS. ANN. tit. 1, §§ 14.

The Civil Rights Act of Puerto Rico prohibits any type of discrimination by private parties or entities that operate under a

license granted by the Commonwealth of Puerto Rico.

Any action, conduct or agreement resulting from a discriminating act is void. The guarantee extended by Mr. López and Ms. Soto is null and void and, furthermore, their patrimony does not make the loan viable and the contractual documents contemporary to the signing of the loan agreement so demonstrate.

Ms. Soto at no pertinent time had substantial independent wealth. Westernbank and its successor, BPPR, have continuously discriminated against Ms. Soto and they continue with such discrimination by demanding the guarantee, obtaining the signing of documents to those effects and then persecuting her for collection in a deceitful [dolus], fraudulent, and illegal manner. Westernbank's conduct and that of its successor, BPPR, have included falsehood and perjury.

At all pertinent times, RCR complied with the Line of Credit contract and punctually paid the monthly installments. Westernbank and its successor, BPPR, breached the Line of Credit contract in various ways, including the collection of sums not owed and sums not overdue.

Simultaneous with the closing of the Line of Credit loan signed by RCR, Westernbank signed a loan agreement with Bumpers Royal for the sum of $1,950,000.00 to be payable in monthly installments of principal and interest.

At all pertinent times, Bumpers Royal complied with the loan agreement and paid the monthly installments.

In the years 2008 and 2009, Westernbank was insolvent, it lacked liquidity, and it breached the regulatory parameters of the Federal Deposit Insurance Corporation. To gather the liquid money it needed to operate and to mold its portfolio in order to comply with the federal regulations, Westernbank began aggressive collection efforts against its customers.

Westernbank's management instructed its personnel to aggressively and quickly place for collection and arrange for the collection of all possible loans and to collect the greatest amount of money possible so

that the bank could recover its liquidity.

On or about late 2008 and during the year 2009, following those instructions from upper management, but in a tortious, negligent, and deceitful [dolus] manner, Westernbank's personnel, contrary to what was agreed upon, without prior notice and changing the course of conduct through which it administered the contract, placed for collection illegally RCR's loan even though the same had been renewed automatically according to its terms. In that manner, Westernbank breached the Line of Credit contract it had with RCR and demanded that RCR and Bumpers Royal quickly sell and liquidate their active businesses and assets.

A few days prior to demanding full payment and the liquidation of the businesses, Westernbank itself had issued an internal memo on RCR for the approval of additional credit expanding the amount of financing for the purchase of vehicles.

In late October 2007, Westernbank's credit committee approved the increase in the Line of Credit, which was then reported to RCR and to Mr. López.

RCR and Mr. López, relying on the representations made by Westernbank's personnel, purchased many additional motor vehicles. Later, Westernbank refused to acknowledge to RCR that the increase in the Line of Credit had actually been approved.

The approval of the modification of the Line of Credit for RCR was recommended by Mr. José Meléndez through written internal memorandum where he correctly reported on February 4, 2009, that, at all pertinent times, RCR complied with its obligations under the Line of Credit contract, and that Bumpers Royal was also in full compliance with its contract.

On the first anniversary of the execution of the Line of Credit contract, Westernbank refused to make disbursements thereunder, even though RCR had made payments that opened the margin available under the original amount and, moreover, under the approved increase.

Westernbank changed the interpretation and application of the terms

of the contract resulting in that it adduced having established contradictory terms in the contract; that is, payable in four years and simultaneously payable on the first anniversary.

Westernbank breached its obligations under the Line of Credit contract, with which it forced RCR into a lack of liquidity and made impossible the replacing of vehicles to renew the fleet routinely, causing damages by forcing the liquidation of inventory at prices below their reasonable value, affecting its capacity and its operating income.

Westernbank and BPPR were fiduciaries of RCR, Bumpers Royal, Mr. López and Ms. Soto, and owed them fiduciary duties. As fiduciaries, Westernbank and BPPR had a duty to act for the benefit of RCR, Bumpers Royal, Mr. López and Ms. Soto.

As fiduciaries, Westernbank and BPPR had a duty of uberrmiae fidea, or, the obligation to act in the utmost good faith and fidelity in their dealings with RCR, Bumpers Royal, Mr. López and Ms. Soto.

As fiduciaries, Westernbank and BPPR had a duty to act with candor and honesty in their dealings with Plaintiffs. As fiduciaries, Westernbank and BPPR had a duty to act with integrity and fairness in their dealings with plaintiffs.

As fiduciaries, Westernbank and BPPR had a duty to refrain from taking advantage of RCR, Bumpers Royal, Mr. López and Ms. Soto by the slightest misrepresentation, and to take on the affirmative duty of employing reasonable care to avoid misleading plaintiffs in all circumstances.

As fiduciaries, Westernbank and BPPR had a duty to exercise sound judgment and prudence in their dealings with Plaintiffs.

As set forth above, Westernbank and BPPR breached their fiduciary duties to Plaintiffs.

   *iii. The Bankruptcy Proceedings*

In the year 2009, RCR was forced to file for bankruptcy under Chapter 11 because of the tortious, negligent, and noncompliant acts of Westernbank. Bumpers Royal is currently inactive due to the fact that

Westernbank forced the closing of its operations with an attachment that it obtained in case number K AC2009-0498 with the presentation of untrue information and which BPPR with its conduct continues implementing.

Neither Bumpers Royal, Mr. López nor Ms. Soto were parties to the proceedings before the Bankruptcy Court. In the bankruptcy proceeding, Westernbank continued its tortious, negligent, deceitful [dolus] conduct, and deprived co-plaintiff RCR of fundamental rights. Such conduct included perjury on fundamental facts and deprivation of due process of the law. In that manner, among others, it initiated the chain of events that co-defendant BPPR continued, thereby causing substantial damages to Plaintiffs. Westernbank engaged in the tortious conduct detailed herein below, which in broad strokes included: submitting false sworn statement, depriving RCR of its fundamental rights and of due process of the law, depriving RCR of timely discovery so as to be able to access vital and fundamental evidence; and depriving of the time granted and agreed upon to use the evidence, thereby obtaining a decision from the Bankruptcy Court that purports to declare rights contrary to the truth and rights of RCR. That decision does not have nor merits the effect of res judicata, nor should it be granted full faith or credit. In the alternative, relief from said judgment should be granted on its content and any mandatory counterclaim was waived by not having been filed.

**B. Procedural Background**

The Court provides the following procedural background where it summarizes the different proceedings which have dealt with Plaintiffs' claims. In doing so, the Court has relied on the parties' filings and the appurtenant documents to Defendant's motion to dismiss and Plaintiffs' opposition thereto.

i. *RCR's Bankruptcy Petition and the Adversary Proceeding*

On March 26, 2009 RCR filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. See Opinion and Order of the Bankruptcy Court for the District of Puerto Rico dated April 23, 2010 in In re: Royal Car Rental, Inc., Case no. 09-2276 (BKT) (Docket No. 21-3).

During the pendency of the petition, RCR commenced an adversary proceeding against Westernbank alleging that Westernbank breached its obligations under the Line of Credit agreement by imposing illegal conditions, controlling RCR's business and its deposits with Westernbank, and refusing to make disbursements before the loan was due. See RCR's Adversary Proceeding Complaint dated October 20, 2009 (Docket No. 21-1).[1]

As part of the adversary proceeding, Westernbank filed a motion for summary judgment against RCR. See Docket No. 44-2. There, Westernbank refuted RCR's arguments and argued instead that it was RCR who breached the Line of Credit agreement. The bank argued that RCR actually incurred in "substantial pre-petition defaults" and owed Westernbank "the aggregate amount of $914,682.70, which consists of $873,958.65 in principal [and] $40,724.05 for interests and costs" under the Line of Credit. See id. at 2. On February 16, 2010 Westernbank filed a supplement to its motion for summary judgment wherein it further alleged that it did not improperly refuse to make any disbursements under the Line of Credit. (Docket No. 44-6).

After the parties' respective briefings on the matter, the Bankruptcy Court awarded summary judgment to Westernbank, finding that it was beyond dispute that RCR had breached the Line of Credit agreement. See Docket No. 21-3. That court held that said agreement expired on May 10, 2008,[2] and that RCR incurred in "substantial pre-petition defaults, including payment defaults, under the Line of Credit." Id. at 2. Specifically, the Court noted that it was undisputed that pursuant to the Line of Credit Agreement, Westernbank disbursed $921,670.62 to RCR and that during the term of said agreement RCR fell behind and defaulted on its payment terms. Id. at 5. Nevertheless, the court found that despite these defaults, both RCR and Westernbank agreed to extend in writing the existing Line of Credit on five occasions: June 25, 2008; August 27,

---

[1] RCR also alleged that Westernbank had failed to perfect a valid security interest over its motor vehicle fleet.
[2] And not in four years, as RCR had claimed.

2008; October 29, 2008; December 24, 2008; and February 26, 2009. This last extension expired on March 31, 2009, five days after RCR filed for bankruptcy.  According to the court, pursuant to those agreements RCR and its guarantors "ratified their obligations to Westernbank, establishing specific dates for repayment, and therefore [RCR] waived any claim that [it] had against Westernbank for the alleged improper termination of the Line of Credit." See id. at 5-6 (citing Marina Industrial, Inc. v. Brown Boveri, 114 D.P.R. 64 (1983); Carrasquillo el al. v. Bertrán et al., 26 D.P.R. 582 (1918))(our emphasis).[3]

The Bankruptcy Court also found that RCR failed to produce any evidence reflecting that Westernbank wrongfully denied disbursements to RCR under the Line of Credit agreement, or that it imposed any conditions which ran afoul of the Bank Holding Company Act ("BHCA"). RCR petitioned for reconsideration of the court's Opinion and Order containing these pronouncements, but the court denied the same on June 7, 2010. See Docket No. 21-4. Judgment was thus entered granting Westernbank's motion for summary judgment on June 16, 2010. See Docket No. 21-5. Plaintiffs have not alleged, and the record does not indicate, that RCR ever appealed this final judgment. Accordingly, the Court finds that the same has become final and unappealable.

   ii. _The First Case Before the Court of First Instance_

Prior to RCR's adversary proceeding, on May 7, 2009 Bumpers Royal, Mr. López and Ms. Soto, as well as their then-existing conjugal partnership (hereinafter the "CFI plaintiffs"), filed another complaint against Westernbank before the Court of First Instance in San Juan (hereinafter "the first CFI case"). See Docket No. 25-1.  There, the CFI plaintiffs alleged that they were the guarantors of RCR's obligations to Westernbank under the Line of Credit Agreement, and that Westernbank had breached the terms of said agreement, thereby causing severe liquidity

---

[3] The court also established that "in its review of the complete record this Court finds that [RCR] has presented no admissible evidence that the Line of Credit agreement was breached by Westernbank." Id. at 6.

problems to RCR. The CFI plaintiffs also requested, *inter alia*, that the CFI: (i) release or reduce their collateral in proportion to the amortization of the Line of Credit; (ii) declare that Westernbank violated the Bank Holding Company Act; (iii) nullify the personal guarantees subscribed by the individual plaintiffs on behalf of RCR; and (iv) award Bumpers Royal damages stemming from Westernbank's defaulting of the Line of Credit and accelerating the debt (as Bumpers Royal's loan agreements were apparently cross-defaulted with RCR's Line of Credit Agreement). As in the adversary proceeding before the Bankruptcy Court, Westernbank filed a motion for summary judgment requesting the CFI dismiss the CFI plaintiffs' complaint, declare them to be in default of their obligations as guarantors and debtors of Westernbank, and order them to pay a sum of not less than $2,854,848.80. See Docket 25-2 at 4.

On July 16, 2010, the CFI issued a judgment whereby it granted Westernbank's motion for summary judgment. There, the CFI stated that "[a]s of today, neither Bumpers Royal nor the López-Soto's have carried out the necessary considerations to satisfy the debts acquired under the Line of Credit." Id. at 8. As a result, the CFI held that Westernbank was within its rights under the Line of Credit to accelerate Bumpers Royal's debts and seek collection thereof. As to the claims related to RCR and the damages it suffered as a result of Westernbank's purported breach of the Line of Credit, the CFI held that the plaintiffs' lacked standing to prosecute them, as RCR was a separate entity which had already advanced those claims before the Bankruptcy Court, and was defeated. In summary, the CFI rejected all of the CFI plaintiffs' claims and entered judgment dismissing their complaint.

The CFI plaintiffs appealed the judgment to the Puerto Rico Court of Appeals, which has yet to rule on the matter.

### iii. *The Second and Instant Case*

On December 15, 2010 Plaintiffs filed a second (and the instant) case before the Commonwealth Court of First Instance, San Juan Superior Part, under the caption Frank López Carballo, et al. v. Banco Popular de

<u>Puerto Rico</u>, Civil No. KPE2010-4888 (904). (Docket No. 1-2). On April 27, 2011 Defendant filed a notice of removal before this Court and the Commonwealth Court, thereby effectively removing the case to this forum. Docket No. 1.

On May 6, 2011 Plaintiff filed an amended complaint advancing several causes of action, namely: (1) violations of the Puerto Rico Civil Rights Act stemming from Westernbank's "demand" that Ms. Soto constitute a personal guarantee to secure RCR's obligations under the Line of Credit agreement; (2) breach of contract claims stemming from Westernbank's alleged breach of the Line of Credit; (3) fraud, dolus, and bad faith on the part of Westernbank for obtaining a judgment from the Bankruptcy Court that was based on the perjury of Westernbank employee José Meléndez, and that BPPR failed to rectify this conduct; (4) malicious prosecution, illegal attachment and abuse of process claims against Defendant; and (5) violation of due process by the Bankruptcy Court. <u>See</u> Docket No. 6.

After several miscellaneous motions, BPPR filed a motion to dismiss Plaintiffs' amended complaint in its entirety. Docket No. 21. There, Defendant argued that all of Plaintiffs' claims are foreclosed by the doctrine of res judicata, as most of these claims have already been disposed of on the merits by both the Bankruptcy Court and the Court of First Instance. The remaining claims are claims which could have been presented to the Bankruptcy Court and the Court of First Instance for their consideration, but were not, and as such they are also barred under the doctrines of res judicata, collateral estoppel and splitting of causes of action. Lastly, Defendant also argued that Plaintiffs failed to meet the clear and convincing standard required to state a claim of "fraud upon the court" under Federal Rule of Civil Procedure 60(b), which provides for relief from judgments.

As part of the motion to dismiss, Defendant attached the following documents: (1) the complaint filed by RCR before the Bankruptcy Court; (2) a docket sheet of the adversary proceeding carried out before that

court; (3) the Opinion and Order issued by said court disposing of
Westernbank's motion for summary judgment; (4) another Opinion and Order
by the Bankruptcy Court disposing of a motion for reconsideration filed
by RCR; (5) the corresponding judgment issued by the Bankruptcy Court;
(6) the complaint filed by Plaintiffs before the Court of First Instance
on May 7, 2009; and (7) The judgment entered by said court dismissing the
case on July 16, 2010.

Plaintiffs opposed the motion to dismiss (Docket No. 44), and
Defendant BPPR replied. (Docket No. 51). Plaintiffs also filed a motion
to strike the Defendant's motion to dismiss, which will be discussed
infra. The Court will now proceed to outline the applicable standard of
review for motions under Federal Rule of Civil Procedure 12(b)(6).

## II. **STANDARD OF REVIEW**

Motions to dismiss brought under Federal Rules of Civil Procedure
12(b)(1) and 12(b)(6) are subject to the same standard of review. See
Negrón-Gaztambide v. Hernández-Torres, 35 F.3d 25, 27 (1st Cir. 1994).
Firstly, when ruling on a motion to dismiss for failure to state a claim,
a district court "must accept as true the well-pleaded factual allegations
of the complaint, draw all reasonable inferences therefrom in the
plaintiff's favor, and determine whether the complaint, so read, limns
facts sufficient to justify recovery on any cognizable theory." Rivera v.
Centro Médico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009) (citing
LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 508 (1st Cir. 1998)).
Additionally, courts "may augment the facts in the complaint by reference
to (i) documents annexed to the complaint or fairly incorporated into it,
and (ii) matters susceptible to judicial notice." Gagliardi v. Sullivan,
513 F.3d 301, 306 (1st Cir. 2008) (internal citations and quotation marks
omitted).

In determining whether dismissal of a complaint is appropriate
pursuant to Rule 12(b)(1) or 12(b)(6), the court must keep in mind that
"[t]he general rules of pleading require a short and plain statement of
the claim showing that the pleader is entitled to relief.... this short

and plain statement need only give the defendant fair notice of what the …
claim is and the grounds upon which it rests." Gargano v. Liberty Intern.
Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009) (internal citations
and quotation marks omitted). Nevertheless, "even under the liberal
pleading standard of Federal Rule of Civil Procedure 8, the Supreme Court
has ... held that to survive a motion to dismiss, a complaint must allege
'a plausible entitlement to relief.'" Rodríguez-Ortiz v. Margo Caribe,
Inc., 490 F.3d 92, 95 (1st Cir. 2007) (citing Bell Atlantic Corp. v.
Twombly, 550 U.S. 544, 559 (2007)). "A claim has facial plausibility when
the plaintiff pleads factual content that allows the court to draw the
reasonable inference that the defendant is liable for the misconduct
alleged." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009)
(citing Twombly, 550 U.S. at 556). That is, "[f]actual allegations must be
enough to raise a right to relief above the speculative level ... on the
assumption that all the allegations in the complaint are true (even if
doubtful in fact)…." Twombly, 550 U.S. at 555 (internal citations and
quotation marks omitted). "Determining whether a complaint states a
plausible claim for relief will … be a context-specific task that requires
the reviewing court to draw on its judicial experience and common sense."
Iqbal, 129 S.Ct. at 1950.

### III. DISCUSSION

     The Court will first discuss the merits of Plaintiffs' motion to
strike. This will be followed by a discussion of whether, as Defendant
posits, the Bankruptcy Court's final judgment is entitled to res judicata
effect. Lastly, the Court will weigh the substance of Plaintiffs' claims
under the Puerto Rico Civil Rights Act.

**A. The Motion to Strike**

     On September 29, 2011 Plaintiffs filed the motion to strike that is
currently pending before the Court. See Docket No. 30. There, Plaintiffs
argue that Defendant's motion to dismiss should be stricken from the
record because Defendant impermissibly attached documents to it that are

foreign to the complaint. In the alternative, Plaintiffs maintain that the motion to dismiss should be converted into a motion for summary judgment or that the offending attachments be stricken from the record. Plaintiffs demand that they be given an opportunity to conduct discovery, in order to safeguard their due process rights and their right to a jury trial under the Fifth and Seventh Amendments, respectively. They contend that assessing the attachments under the rubric of Rule 12(b)(6) will jeopardize their rights under those amendments.

Defendant has opposed these arguments. See Docket No. 51. To summarize, Defendant argues that the appended documents are public records which were clearly referenced in the amended complaint, and that as the authenticity of these records is not being contested by Plaintiffs, the Court may consider them in evaluating the motion to dismiss. This Court agrees with Defendant's assessment.

Under the Rule 12(b)(6) standard the Court may only consider facts and documents that are part of or incorporated into the complaint; if documents outside of the pleadings are considered, the motion should be adjudicated under the more stringent standards of a Rule 56 motion for summary judgment. Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008). The First Circuit has carved out several exceptions to this rule "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." Rivera v. Centro Médico del Turabo, 575 F.3d 10, 15 (1st Cir. 2009). These may be properly considered on a Rule 12(b)(6) motion. What's more, that court has also noted that when a complaint's factual allegations "are expressly linked to-and admittedly dependent upon-a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6). Trans-Spec Truck Serv., 524 F.3d at 321.

The documents at issue in this case clearly fall within the above-

stated exceptions. It is obvious that all of these items—e.g. the Orders issued by the Bankruptcy Court in RCR's bankruptcy proceedings and the complaints filed by RCR before that Court and the Court of First Instance in San Juan—are all public records which may be considered as part of a Rule 12(b)(6) motion. Moreover, both the proceedings before the Bankruptcy Court and the Court of First Instance are events which are "sufficiently referred to" in the Amended Complaint. See Docket No. 6, pp. 3-4, 14-15 and 18-19. The documents relied upon by Defendant in its motion to dismiss are faithful representations of the contours of those proceedings. Plaintiffs were on adequate notice as to their contents and as such the Court is entitled to rely on them for the purposes of disposing of the motion to dismiss. See Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2nd Cir. 1991) ("[T]he problem that arises when a court reviews statements extraneous to a complaint generally is the lack of notice to the plaintiff.... Where plaintiff has actual notice ... and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated).

Accordingly, the Court finds that Plaintiffs' motion to strike must be **DENIED.**

**B. The Bankruptcy Court Judgment is Entitled to Res Judicata Effect.**

i. *Res Judicata*

As the Court explained above, Defendant waives the flag of res judicata in an attempt to derail Plaintiffs' complaint. Plaintiffs counter that the Bankruptcy Court's final judgment is unworthy of res judicata as Westernbank allegedly procured it by fraud. For the reasons outlined below, the Court agrees with Defendant.

In determining whether the Bankruptcy Court's final judgment merits the cloak of res judicata, the Court looks to federal law and not to state law, as the decision was issued by a federal court. Nuñez-Nuñez v. Sánchez-Ramos, 419 F.Supp.2d 101, 111 (D.P.R. 2006)(citing In re El San

Juan Hotel Corp., 841 F.2d 6, 9 (1st Cir. 1988)). The First Circuit Court of Appeals has explained that "there are two different aspects of res judicata - claim preclusion and collateral estoppel (also called issue preclusion)." Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26, 30 (1st Cir. 1994) (citing Dennis v. Rhode Island Hosp. Trust, 744 F.2d 893, 898 (1st Cir. 1984)). The claim preclusion doctrine is simple: it mandates that "a final judgment on the merits of an action precludes the parties from relitigating claims that were or could have been raised in the prior action." Haag v. Shulman, 683 F.3d 26, 30 (1st Cir. 2012). In order for claim preclusion to apply, the following three elements must exist: (i) a final judgment on the merits in an earlier case; (ii) an identity of the cause of action in both the earlier and present suits; and (iii) an identity of the parties or privies in the two cases. Id.

Both the Supreme Court and the First Circuit have repeatedly found that Bankruptcy Court judgments are entitled to claim preclusion if the elements are satisfied. See Chicot County Dist. v. Bank, 308 U.S. 371 (1980); F.D.I.C v. Shearson-American Exp., Inc., 996 F.2d 493, 498 (1st Cir. 1993) ("Orders, judgments and decrees of the bankruptcy court from which an appeal is not timely taken are final… even if erroneous"); and Katchen v. Landy, 382 U.S. 323, 334 (1966) ("The normal rules of res judicata and collateral estoppel apply to the decisions of the bankruptcy courts."). Thus, the Court will now assay whether the Bankruptcy Court's judgment is entitled to preclusive effect.

1. A Final Judgment on the Merits

In the case at hand, the Bankruptcy Court issued its Opinion and Order dismissing RCR's claims with prejudice on April 23, 2010, ruling which was further cemented by that court's denial of RCR's motion for reconsideration on June 7, 2010. Final Judgment dismissing the case was entered on June 16, 2010.  Thus, it is simply beyond a doubt that the first element of res judicata is satisfied—the final judgment effectively disposed of all the claims in RCR's motion for summary judgment, thereby ending the litigation on the merits and leaving nothing for the court to

do but to execute the judgment. See <u>Whitfield v. Municipality of Fajardo</u>, 564 F.3d 40, 45 (1st Cir. 2009).

  2. Identicality of Claims

    As to the second element, the court finds that there exists identicality between some of the causes of action asserted in the adversary proceeding and this proceeding. The issues before the Bankruptcy Court were the following: (i) whether Westernbank breached the terms of the Line of Credit Agreement; (ii) whether Westernbank duly perfected a security interest over RCR's motor vehicle fleet; and (iii) whether Westernbank engaged in monopolistic practices proscribed by the BHCA. Likewise, in this suit Plaintiffs—including RCR—have also advanced a breach of contract claim against Defendant, alleging that Westernbank breached the Line of Credit Agreement by: (i) engaging in monopolistic practices; (ii) unilaterally ceasing disbursements; (iii) seeking payment of amounts before they were due; (iv) demanding liquidation of RCR's motor vehicles; and (v) failing to renew the agreement despite its provision for automatic renewal. See Docket No. 6, p. 19.

    It is evident that the second element of the claim preclusion test is met as to the breach of contract claim being advanced by the Plaintiffs in this action. In their action before the Bankruptcy Court, RCR also alleged that Westernbank breached the terms of the Line of Credit Agreement by engaging in monopolistic practices, unjustifiably ceasing disbursements, improvidently demanding payments and failing to renew the agreement. As such, there is perfect identicality between the breach of contract claims that were litigated in the Bankruptcy Court and those that are now coursing through this case.

  3. Privity between Parties

    The issue before the Court now is whether the other plaintiffs in this action are barred from asserting the same breach of contract claim against Defendant, even though they were not parties to the adversary proceeding. To solve it, the Court must determine whether the additional plaintiffs in this case, namely Mr. López, Ms. Soto and Bumpers Royal,

are sufficiently in privity with RCR so as to constitute the same party for claim preclusion purposes. The Court concludes that they are, and thus the third element of the claim preclusion test is met and Plaintiffs are barred from relitigating their breach of contract claim against Westernbank's successor, BPPR.

Privity may be found to exist where "one party acts for or stands in the place of another in relation to a particular subject matter." R.G. Financial Corp. v. Vergara-Nuñez, 446 F.3d 178, 187 (1st Cir. 2006). The First Circuit has explained that claim preclusion does not require privity between the parties in the two suits; rather, claim preclusion applies if there is privity or if the new party is closely related to the party from the original action. Silva v. City of New Bedford, 660 F.3d 76 (1st Cir. 2011). A sufficiently close relationship for claim preclusion purposes may be found to exist when the parties are related by employment or agency. Id. In this case, Mr. López was the president and sole shareholder of both RCR and Bumpers Royal. The record reflects that he signed the Line of Credit agreement, as well as several other loan documents, on behalf of RCR. In addition, Mr. López also served as a personal guarantor of RCR, in effect becoming a creditor of the bankruptcy estate. As such, Mr. López was effectively in a position of power which allowed him to control the actions of RCR, even when it was in bankruptcy.

The Second Circuit has held that "a judgment against a corporation bars later litigation on the same cause of action by an officer, director, or shareholder of the corporation if the individual participated in and effectively controlled the earlier case." In re Teltronics Services, Inc., 762 F.2d 185, 191 (2nd Cir. 1985); see also Sanders Confectionery Products, Inc. v. Heller Financial, Inc., 973 F.2d 474 (6th Cir. 1992) (holding that a president of a corporation, who was also its sole shareholder, was in privity with that corporation in its prior bankruptcy action, as said president enjoyed a position of power that allowed him to control the actions of the corporation); Explosives

Corp. of America v. Garlam Enterprises Corp., 817 F.2d 894 (1st Cir. 1987); and McLaughlin v. Morton, 977 F.2d 566 (1st Cir. 1992)(holding that nonparty sole shareholder of a corporation was bound by a prior adjudication as there was sufficient legal identity between shareholder and the prior litigant corporation.). Consequently, the Court finds that Mr. López was very much in privity with RCR.

The Court also finds likewise for the remaining co-plaintiffs, Ms. Soto and Bumpers Royal. Ms. Soto was married to Mr. López under a conjugal partnership regime at the time that RCR was operating under the Line of Credit. Moreover, Ms. Soto also served as a guarantor and joint and several co-debtor with RCR. Bumpers Royal, on its part, shares common ownership with RCR, as they are both closely held corporations owned by Mr. López, who serves as president of both. In addition, when Bumpers Royal's sales dwindled, it was RCR that cross financed its operations. Bumpers Royal also served as guarantor and joint and several co-debtor with RCR. Under this scenario, the Court can only conclude that all of the co-plaintiffs were in privity with RCR with respect to its breach of contract claims. It cannot be doubted that said claims derive from the same nucleus of operative facts outlined in RCR's complaint before the Bankruptcy Court. The Bankruptcy Court rejected those claims, and consequently co-plaintiffs are precluded from making them here under the doctrine of claim preclusion.[4]

**C. Plaintiffs are not Entitled to Relief from Judgment.**

Plaintiffs' next argument is that the Bankruptcy Court's final judgment should not be afforded the effect of res judicata as it is allegedly tainted by fraud. Plaintiffs base their contention on an affidavit filed by Westernbank in support of its motion to dismiss, which Plaintiffs say directly contradicts an internal memorandum authored by the same affiant, and thus constitutes perjury and a fraud before the

---

[4] It is the Court's opinion that the claims would also be barred under the doctrine of issue preclusion. This, as the Bankruptcy Court held that RCR had waived its claims that Westernbank had breached the Line of Credit Agreement by executing the agreements to extend said agreement on five separate occasions.

court. In addition, Plaintiffs contend that the Bankruptcy Court curbed their due process rights by not allowing them to file a sur-reply to the motion for summary judgment, even though the court had represented otherwise beforehand. Based on this, it seems that Plaintiffs are arguing that they are entitled to a relief from the Bankruptcy Court's judgment under Federal Rule of Civil Procedure 60(b)(3). Defendant, on its part, denies that any fraud was perpetrated upon the Bankruptcy Court. But even if it were, Defendant asserts that said fraud is not sufficiently egregious to warrant a relief from judgment, particularly in light of the fact that RCR had access to the internal memorandum before the Bankruptcy Court's final judgment was entered, and neglected to appeal the same. For the reasons that follow, the Court finds that Defendant is correct, and thus Plaintiffs are not entitled to a relief from judgment.

Federal Rule of Bankruptcy Procedure 9024 states that Federal Rule of Civil Procedure 60 will apply in those cases in which relief is sought from a Bankruptcy Court's judgment or order. In its pertinent part, Rule 60(b) states that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: … (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." A party seeking refuge under this provision must mount two separate hurdles: first, the movant "must demonstrate misconduct—such as fraud or misrepresentation—by clear and convincing evidence," and second, the movant "must show that the misconduct foreclosed full and fair preparation or presentation of his case." Karak v. Bursaw Oil Corp., 288 F.3d 15, 21 (1st Cir. 2002). In short, a finding of fraud upon the court is justified "only by the most egregious misconduct directed to the court itself and it must be supported by clear, unequivocal and convincing evidence." United States v. Yeje-Cabrera, 430 F.3d 1, 29 n. 22 (1st Cir. 2005)(quotation marks and citations omitted).

The First Circuit has established that a movant is not entitled to relief under Rule 60(b)(3) "where he or she has access to disputed

information or has knowledge of inaccuracies in an opponent's representations at the time of the alleged misconduct." Ojeda-Toro v. Rivera-Mendez, 853 F.2d 25, 29-30 (1st Cir. 1988); see also Washington v. State Street Bank & Trust Co., 14 Fed.Appx. 12, 15 (1st Cir. 2001); Del Moral v. UBS Financial Services Inc., 815 F.Supp.2d 495, 506-07 (D.P.R. 2011); and Good Luck Nursing Home, Inc. v. Harris, 636 F.2d 572, 577 (D.C. Cir. 1980)(A party who has not presented known facts helpful to its cause when it had the chance to do so cannot ordinarily avail itself of a motion for relief from judgment after an adverse judgment has been handed down.); Geo. P. Reintjes Co. v. Riley Stoker Corp., 71 F.3d 44 (1st Cir. 1995)(denying relief under Rule 60 to a movant who had failed to use available discovery to uncover the alleged misconduct.). Moreover, Rule 60(b)(3) was not meant to be used as a substitute for a timely appeal. See Geigel v. Sea Land Service, Inc., 44 F.R.D. 1, 2 (D.P.R. 1968) ("Rule 60(b) of the Federal Rules of Civil Procedure was not intended to benefit an unsuccessful litigant who, long after time during which appeal from final judgment could have been perfected, first seeks to express dissatisfaction, since this Rule was not intended to afford a substitute for an appeal.")

As outlined above, Plaintiffs note that Westernbank, as part of its motion for summary judgment during the adversary proceeding, submitted an unsworn statement under penalty of perjury signed by Mr. José Meléndez, an assistant vice-president of Westernbank. See Docket No. 44-3 at 155. Said statement was dated December 30, 2009 and contained a declaration by Mr. Meléndez to the effect that RCR had incurred in "substantial pre-petition defaults, including payment defaults, under the Line of Credit." However, during the discovery process RCR was apparently furnished with an internal Westernbank memorandum also crafted by Mr. Meléndez, and which was dated February 4, 2009. Docket No. 46-8. In that document, Mr. Meléndez stated that RCR "has remained current in the payment of the [Line of Credit]; despite the fact that during 2008 it financed part of the operations of the affiliate Bumpers Royal." Id. at 13. Upon noticing

the apparent inconsistency between the two statements, RCR rapidly accused Mr. Meléndez and Westernbank of committing perjury and fraud upon the Bankruptcy Court. Plaintiffs further claim that RCR attempted to bring the internal memorandum to the Bankruptcy Court's attention, but by then it was too late, as said court had already entered its Opinion and Order granting Westernbank's motion for summary judgment. See RCR's Motion to Inform filed on April 26, 2010, Docket No. 44-14.

To summarize their argument, Plaintiffs claim that they received the internal memorandum on April 21, 2010. Two days later, on April 23, 2010 the Bankruptcy Court issued its Opinion and Order awarding summary judgment to Westernbank. Plaintiffs claim that this order took them by surprise as, according to them, discovery was still ongoing and the court had granted RCR until May 4, 2010 to file a sur-reply. RCR attempted to call the Bankruptcy Court's attention to these facts as well as the existence of the internal memorandum via several motions, but said court struck the same from the record. See Docket No. 44-18. In its order striking the motions, the Bankruptcy Court only stated that the statements contained in the internal memorandum were "inadmissible" (without explaining why) and that the court had never granted RCR leave to file a sur-reply; said court clarified that a minute entry stating otherwise was incorrect, and remitted RCR to the transcript of the hearing where the schedule for the dispositive motions was set. On May 11, 2010 RCR filed a motion for reconsideration of the Bankruptcy Court's Opinion and Order, where it cursorily mentioned the internal memorandum and reiterated its belief that it had been deprived of a fair opportunity to defend itself by the court's decision to disallow its sur-reply.

The Bankruptcy Court denied the motion for reconsideration on June 7, 2010. Docket No. 21-4. In its order, the court did not directly address the existence internal memorandum, but rather focused mostly on rejecting RCR's claim that Westernbank violated the anti-monopolistic provisions of the BHCA. As to RCR's argument that Westernbank committed fraud, the court tersely stated that it was unconvinced by the argument,

as RCR had voluntarily agreed to extend the Line of Credit agreement five times. Accordingly, this Court can only conclude that the Bankruptcy Court found the internal memorandum to be irrelevant, under the reasoning that by signing the agreements to extend, RCR waived any claims it had against Westernbank for improper termination of the Line of Credit agreement, and thus ratified its obligations under said agreement.

Having carefully analyzed Plaintiffs' argument, and upon reviewing the facts on the record, this Court finds that Plaintiffs are not entitled to the extraordinary remedy that is a relief from judgment. First of all, the Court cannot categorically state, as Plaintiffs would have it do, that the internal memorandum and the unsworn statement refer to the same period of time. The unsworn statement was drafted ten months after the internal memorandum, so it is possible that RCR incurred in the alleged defaults after the internal memorandum was created. At most, Plaintiffs have made a showing of conflicting evidence. Therefore, the Court finds that Plaintiffs have not demonstrated fraud by the applicable "clear, unequivocal and convincing" standard of Rule 60(b)(3). On another note, Plaintiffs cannot show that the alleged misconduct hindered their ability to fully prepare and present their case. The internal memorandum was furnished to RCR as part of the discovery process, and RCR was able to convey it to the court's attention via several motions, including the motion for reconsideration. The Bankruptcy Court, however, rejected the notion that said document could have altered its prior decision to award summary judgment to Westernbank.

Lastly, what ultimately sounds the death knell for Plaintiffs' case is that RCR failed to appeal the final judgment entered by the Bankruptcy Court, despite having opportunity to do so under Federal Rule of Bankruptcy Procedure 8001. This, even though it believed that its due process rights had been abridged. As Plaintiffs have offered no valid reason for having failed to lodge an appeal, this fact alone is enough to entomb their argument under Rule 60(b)(3).

Accordingly, the Court **DENIES** Plaintiffs' request for relief from

Civil No. 11-1399(PG)                                          Page 26

judgment under Rule 60(b)(3).

**D. Mr. López and Ms. Soto's Claim of Discrimination**

     Ms. Soto and Mr. López claim that as part of the Line of Credit
Agreement they were required to personally guarantee the obligations of
RCR to Westernbank. <u>See</u> Docket No. 6, ¶ 37. They claim this requirement
infringed their rights under the Puerto Rico Civil Rights Act, which
provides, in part, that

> No person shall be denied in Puerto Rico any access, service,
> and equal treatment in public places and businesses and in the
> means of transportation because of political, religious, race,
> color or sex issues, or for any other reason not applicable to
> all persons in general.

1 P.R. Laws Ann. tit. 1, sec. 13(a). It seems Mr. López and Ms. Soto are
basing their argument on the assertion that their patrimony did not make
the Line of Credit viable, and that this somehow invalidated their
personal guarantees. Furthermore, Ms. Soto claims that Westernbank
discriminated against her by demanding that she sign the personal
guarantee, even though she possessed no substantial independent wealth,
and by "persecuting her for collection in a deceitful (dolus)
fraudulent, and illegal manner". Docket No. 6, ¶¶ 44-5.

     Defendant in its motion to dismiss argues that this claim should be
dismissed as Plaintiffs failed to bring it in the first CFI case. While
it is true that Plaintiffs should have brought this claim one and a half
years earlier during the first CFI case, the Court finds that in any
event, Plaintiffs have failed to plead sufficient facts to undergird a
plausible claim of discrimination against Defendant. In their amended
complaint, Plaintiffs have not alleged that they were denied services by
Westernbank because of political, religious, race, color or sex issues,
or for any other reason not applicable to all persons in general. They
also do not aver how Westernbank treated persons similarly situated to
Mr. López and Ms. Soto differently. Mr. López and Ms. Soto only claim
that their patrimony did not render the Line of Credit Agreement viable.
However, this is a far cry from discrimination, particularly since

Plaintiffs' own allegations reflect that Westernbank attempted to secure RCR's obligations with a variety of different interests, including mortgages and personal guarantees. The other averments are entirely conclusory, and hence may be discarded by this Court. <u>See</u> <u>Feliciano-Hernández v. Pereira Castillo</u>, 663 F.3d 527, 534 (1st Cir. 2011)(Unadorned, the-defendant-unlawfully-harmed-me accusations are insufficient under the pleading standards set by <u>Iqbal</u>.)

Therefore, absent any allegation to the effect that Westernbank coerced Mr. López and Ms. Soto to sign the personal guarantees, this Court finds that Plaintiffs' charge of discrimination is flawed. Accordingly, the claims under the Puerto Rico Civil Rights Act are hereby **DISMISSED**.

**IV. <u>CONCLUSION</u>**

In conclusion, the Court hereby **GRANTS** Defendant's Motion to Dismiss (Docket No. 21) and **DENIES** Plaintiffs' Motion to Strike (Docket No. 30). The Notice of Request for Certification of State Law Questions filed by Plaintiffs (Docket No. 36) is also **DENIED**. Therefore, the Court orders that the instant case be **DISMISSED WITH PREJUDICE**.

The Court also notes that Plaintiffs have seriously miscomprehended the available procedural remedies designed to safeguard their rights. Their quandary could have been avoided by simply appealing the Bankruptcy Court's adverse judgment. Instead, Plaintiffs have sought to flood the Puerto Rico Courts of First Instance and Appeals, as well as this Court, with claims that should have been prosecuted by filing an appeal under Federal Rule of Bankruptcy Procedure 8001. By doing so, they have unnecessarily taken up valuable judicial resources.

**IT IS SO ORDERED**

In San Juan, Puerto Rico, August 1, 2012.

*s/ Juan M. Pérez-Giménez*
**JUAN M. PEREZ-GIMENEZ**
**SENIOR U.S. DISTRICT JUDGE**
